IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Orian Rugs, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 8:13-331-HMH |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Sears Holdings Corporation; | ) | |
| Sears Holdings Management Corporation; | ) | |
| Sears Brands Management Corporation; | ) | |
| Sears, Roebuck and Co.; and | ) | |
| Kmart Corporation a/k/a | ) | |
| K Mart Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the motion to dismiss pursuant to Federal Rules of

Civil Procedure 12(b)(3) and (6), or, in the alternative, transfer this action to the United States

District Court for the Northern District of Illinois pursuant to 28 U.S.C. §§ 1404(a) and 1406(a)

filed by Sears Holdings Corporation, Sears Holdings Management Corporation, Sears Brand

Management Corporation, Sears, Roebuck and Co., and Kmart Corporation a/k/a K Mart

Corporation (collectively "Defendants"). After review, the court grants Defendants' motion to

transfer under 28 U.S.C. § 1404(a).

## I. FACTUAL AND PROCEDURAL BACKGROUND

Orian Rugs, Inc. ("Orian") is in the textile floor-covering industry with its principal place

of business in Anderson County, South Carolina. (Defs. Notice of Removal Attach. 1 (Compl.

¶ 1), ECF No. 1-1.) Orian maintained business relationships with Kmart Corporation ("Kmart")

and Sears, Roebuck and Co. ("Sears") independently for several years.[1]  (Defs. Reply 2, ECF

No. 13.)   However, in 2005, Kmart and Sears merged.  (Id. Attach. (Miller Second Decl. ¶ 7),

ECF No. 13-1.)  Sears Holdings Corporation ("Sears Holdings") was formed in connection with

the merger and became the parent company of Kmart and Sears.  (Id. Attach. (Miller Second

Decl. ¶ 7), ECF No. 13-1; Defs. Mem. Supp. Mot. Dismiss Ex. (Miller First Decl. ¶ 2, ECF No.

5-3.)  Sears Holdings' principal place of business is in Illinois.  (Defs. Reply 2, ECF No. 13.)

On April 22, 2008, Orian and Sears Holdings executed an agreement titled, "Addendum

to UTC," which required Orian to "handle, warehouse, and ship" certain merchandise directly to

Sears Holdings' customers, rather than one of its subsidiaries' stores.  (Pl. Mem. Opp'n Mot.

Dismiss Ex. A (Addendum to UTC 1), ECF No. 8-2.)  The 2008 Addendum to UTC did not

contain a forum-selection clause.  (Id. Ex. A (Addendum to UTC 1), ECF No. 8-2.)  When the

2008 Addendum to UTC was signed on April 22, 2008, the Defendants allege that a contract

existed between Orian and Kmart executed on December 21, 2004, and between Orian and Sears

executed on March 5, 1996.  (Defs. Reply Attach. A (Kmart Master Vender Agreement 1), ECF

No. 13-2; Id. Attach. B (Sears Universal Terms & Conditions 1), ECF No. 13-3.)  Both the 2004

agreement with Kmart and the 1996 agreement with Sears contained choice-of-law provisions

and forum-selection clauses.  (Id. Attach. A (Kmart Master Vender Agreement 3-4), ECF No.

13-2; Id. Attach. B (Sears Universal Terms & Conditions 4), ECF No. 13-3.)  The 2008

---

[1]Defendants introduced two signed, written agreements between Orian and Kmart dated
August 5, 1986, and December 21, 2004.  (Def. Reply Attach. C (Kmart Letter Agreement 1-2),
ECF No. 13-4; Id. Attach. A (Kmart Master Vender Agreement 1, 3-4), ECF No. 13-2.)
Defendants also introduced a signed, written agreement between Orian and Sears dated March 5,
1996.  (Id. Attach. B (Sears Universal Terms & Conditions 1, 4), ECF No. 13-3.)  All three
agreements included choice-of-law provisions and forum-selection clauses.

Addendum to UTC was the first written agreement executed between Orian and Sears Holdings, the parent company of Sears and Kmart. (Id. at 3, ECF No. 13.)

Sears Holdings Management Corporation and Orian executed a Universal Terms and Conditions agreement ("2011 UTC") with an effective date of April 26, 2011. (Defs. Mem. Supp. Mot. Dismiss Ex. A (UTC 1), ECF No. 5-2.) The 2011 UTC provides that it applies

> to all Merchandise . . . supplied by [Orian], directly or indirectly through [Orian's] dealers or distributors, to Kmart Corporation (together with its subsidiaries, "Kmart"), Sears Brands Management Corporation (together with its subsidiaries, "Sears Brands"), Sears, Roebuck and Co. (together with its subsidiaries, "Sears") and all other subsidiaries of Sears Holdings Corporation (together with Kmart, Sears Brands and Sears, "Company").

(Id. Ex. A (UTC 1), ECF No. 5-2.) Additionally, the 2011 UTC contains a choice-of-law provision and a forum-selection clause:

> Governing Law. The Vendor Agreements and the UTC shall be construed and enforced in accordance with the internal laws of the State of Illinois without regard to its conflict of law principles or other laws of any jurisdiction that would cause the application of the laws of any jurisdiction other than the State of Illinois. . . .
> Submission to Jurisdiction. Seller ["Orian"] and Company ["Sears Holdings"] hereby consent to the personal and subject matter jurisdiction of the state and federal courts located in Cook County, Illinois[,] and hereby agree that the proper and exclusive venue for any dispute concerning any Vendor Agreement shall be in such courts. All objections to such jurisdiction or venue are hereby waived. Seller consents to service of process as permitted under Illinois law or by certified mail, return receipt requested.

(Id. Ex. A (UTC ¶¶ 17.5, 17.6), ECF No. 5-2.) Thereafter, Orian signed an additional agreement with Kmart ("2011 Kmart Letter Agreement") on August 25, 2011, "subject to [] the terms and conditions of" the 2011 UTC with an effective date of February 15, 2012. (Pl. Mem. Opp'n Mot. Dismiss Ex. B (2011 Kmart Letter Agreement 1), ECF No. 8-3.) The 2011 UTC

3

was attached and incorporated by reference.  (Id. Ex. B (2011 Kmart Letter Agreement 1, 7-15), ECF No. 8-3.)

    While doing business together under the foregoing agreements, Orian alleges that it was not compensated for merchandise it "produced and sold" to the Defendants' customers.  (Defs. Notice of Removal Attach. 1 (Compl. ¶¶ 10-14), ECF No. 1-1.)  Orian brings the instant action against the Defendants for breach of contract in the amount of $158,205.20 due from unpaid invoices dating November 15, 2011 to January 24, 2012.  (Defs. Notice of Removal Attach. 1 (Compl. ¶ 13), ECF No. 1-1.)  Orian filed the instant complaint in the Court of Common Pleas for Anderson County on December 20, 2012.  Defendants removed the action to this court on February 6, 2013.  On February 7, 2013, the Defendants filed the instant motion to dismiss for improper venue, or, in the alternative, to transfer the case to the Northern District of Illinois pursuant to the forum-selection clause in the 2011 UTC.

## II. DISCUSSION OF THE LAW

    "[F]ederal law, specifically 28 U.S.C. § 1404(a), governs the District Court's decision whether to give effect to the parties' forum-selection clause and transfer this case to [the Northern District of Illinois.]"  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 32 (1988). Section 1404(a) states, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."  28 U.S.C. § 1404(a).  "Decisions whether to transfer a case pursuant to 28 U.S.C. § 1404 are committed to the discretion of the transferring judge . . . ."  Brock v. Entre Computer Ctrs., Inc.  933 F.2d 1253, 1257 (4th Cir. 1991).

In this case, the Defendants argue that the forum-selection clause is binding and that it requires transfer to the Northern District of Illinois. In Stewart, the United States Supreme Court addressed how a motion to transfer under § 1404 interplays with a contractual forum-selection clause. The Court in Stewart explained:

> Section 1404(a) directs a district court to take account of factors other than those that bear solely on the parties' private ordering of their affairs. The district court also must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of the interest of justice. It is conceivable in a particular case, for example, that because of these factors a district court acting under § 1404(a) would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause . . . . The forum-selection clause, which represents the parties' agreement as to the most proper forum, should receive neither dispositive consideration . . . nor no consideration . . . , but rather the consideration for which Congress provided in § 1404(a).

487 U.S. at 30-31 (internal quotation marks and citations omitted).

In Brock, the Fourth Circuit, applying Stewart, noted that "[t]he one factor which weigh[ed] heavily in favor of Virginia [was] the forum selection clause included in the [parties'] contract . . . ." Brock, 922 F.2d at 1258. Finally, the court concluded that the forum-selection clause was "dispositive only because no other factors tip[ped] the balance under a careful § 1404(a) analysis." Id. Thus, while the presence of a forum-selection clause weighs heavily in the § 1404(a) analysis and is considered with other case-specific factors, it is typically not the sole dispositive consideration.

### A.  Forum-Selection Clause

"Before the 'case-specific factors' are balanced under § 1404(a), the [c]ourt must first determine whether the forum-selection clause is valid under federal law, and therefore is able to be considered as a factor under § 1404(a)." Republic Mortg. Ins. Co. v. Brightware, Inc., 35

F. Supp. 2d 482, 484 (M.D.N.C. 1999). A forum-selection clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972). A forum-selection clause may be considered unreasonable if:

> (1) [its] formation was induced by fraud or over-reaching; (2) the complaining party "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) [its] enforcement would contravene a strong public policy of the forum state.

Albemarle Corp. v. AstraZeneca UK Ltd., 628 F.3d 643, 651 (4th Cir. 2010) (quoting Allen v. Lloyd's of London, 94 F.3d 923, 928 (4th Cir. 1996)).

Orian first contends that the 2011 UTC was not in effect at the time of the unpaid invoices at issue in this case, November 15, 2011 to January 24, 2012. Orian argues that the court should not consider the April 2011 UTC because the parties were operating under the 2008 Addendum to UTC. (Pl. Mem. Opp'n Mot. Dismiss 4, ECF No. 8.) It is clear that the parties' contractual relationship dates significantly earlier than 2008. Before Sears Holdings became the parent company of Sears and Kmart in 2005, Orian executed written agreements without an expiration date with Sears and Kmart independently in 1996 and 2004, respectively. (Defs. Reply Attach. B (Sears Universal Terms & Conditions 1), ECF No. 13-3; Id. Attach. A (Kmart Master Vendor Agreement 2), ECF No. 13-2.) The executed contracts included choice-of-law provisions and forum-selection clauses requiring any dispute to be litigated in the states of Sears' and Kmart's respective principal places of business, Illinois and Michigan. (Id. Attach. B (Sears Universal Terms & Conditions 4), ECF No. 13-3; Id. Attach. A (Kmart Master Vendor Agreement 3-4), ECF No. 13-2.) Although the 2008 Addendum to UTC does not contain a

6

forum-selection clause, Sears' and Kmart's agreements clearly did.  It is unclear what agreement

the 2008 Addendum to UTC supplemented or modified.  However, the 1996 agreement between

Orian and Sears is titled "SEARS, ROEBUCK AND CO. UNIVERSAL TERMS AND

CONDITIONS."  (Defs. Reply Attach. B (Sears Universal Terms & Conditions 1), ECF

No. 13-3.)

        Further, after the execution of the 2008 Addendum to UTC, the parties executed the

2011 UTC on April 26, 2011.  Orian contends this agreement was executed in anticipation of the

2011 Kmart Letter Agreement, which did not become effective until February 15, 2012.[2]

However, the 2011 UTC explicitly states that "[t]he terms and conditions contained herein

("UTC") shall be effective as of the date set forth above . . ." which was April 26, 2011.  The

effective date of the 2011 UTC is unambiguous.  Compare McGill v. Moore, 672 S.E.2d 571,

574 (S.C. 2009) ("The cardinal rule of contract interpretation is to ascertain and give legal effect

to the parties' intentions as determined by the contract language.  Where the contract's language

is clear and unambiguous, the language alone determines the contract's force and effect.")

(internal citations omitted), with Salce v. Saracco, 949 N.E.2d 284, 288 (Ill. App. Ct. 2011)

("The primary goal of contract interpretation is to give effect to the intent of the parties. . . .  If

the language of a contract is clear and unambiguous, the intent of the parties must be determined

solely from the language of the contract itself, which should be given its plain and ordinary

_____

        [2]The court notes that the 2011 Kmart Letter Agreement only involved Orian and Kmart
and did not include Sears or mention Sears Holdings Corporation.  (Pl. Mem. Opp'n Mot.
Dismiss Ex. B (2011 Kmart Letter Agreement 1), ECF No. 8-3) ("This Letter Agreement
("Agreement") is formal notification that your company, Orian Rugs, Inc. ("Seller"), on
August 25th, 2011, has been selected through use of an online procurement tool to supply
certain products for resale by Kmart Corporation . . . .").

meaning, and the contract should be enforced as written.").[3]  Thus, the effective date of the 2011

UTC was April 26, 2011.  Therefore, the 2011 UTC and its forum-selection clause were in

effect during the time period of the unpaid invoices.

Orian does not argue that the forum-selection clause was a product of fraud or is

overreaching.  Orian also does not contend that the chosen law is fundamentally unfair or that its

enforcement would contravene a strong public policy of the forum state.  (See Pl. Mem. Opp'n

Mot. Dismiss 5, ECF No. 8.)  Further, any notion that enforcement of the forum-selection clause

would contravene a strong public policy of South Carolina has been dispelled by the Fourth

Circuit's holding in Albemarle.  Albemarle, 628 F.3d at 652 ("[W]e can find virtually no

evidence to indicate that S.C. Code Ann. § 15-7-120(A), overriding exclusive forum selection

clauses in favor of applying state procedural rules of venue, manifests a strong public policy of

South Carolina.  We could find no South Carolina court that so held.").  Orian argues, however,

that enforcement of the forum-selection clause would be unreasonable because it "will suffer

grave inconvenience and unfairness if it is required to pursue this action in Illinois and [] will be

deprived of a full and complete remedy for its claims against Defendants."  (Id.)  "The party

challenging the clause must demonstrate that the specified forum is so seriously inconvenient

that he would be deprived of an opportunity to participate in the adjudication."  Republic, 35

F. Supp. 2d at 484 (internal quotation marks omitted).  "Absent that, there is no basis for

concluding that it would be unfair, unjust, or unreasonable to hold th[e] party to [its] bargain."

Bremen, 407 U.S. at 18.

---

[3]The 2011 UTC contains a choice-of-law provision designating that Illinois law applies.
The application of the choice-of-law provision has not been challenged.  However, the law of
Illinois and South Carolina on the issue of contract construction is the same.

Orian merely alleges that "[r]equiring [it] to bring this action more than 700 miles away in Chicago, Illinois, would place such a financial burden on [it] that (if it is able to obtain a judgment for the full amount due) it will reduce its judgment by a considerable percentage." (Pl. Mem. Opp'n Mot. Dismiss 5, ECF No. 8.) However, "distance and expense are not the yard-sticks of inconvenience in an agreement that is freely negotiated such as this one . . . ." Republic, 35 F. Supp. 2d at 484; see also Bremen, 407 U.S. at 17-18 ("Whatever 'inconvenience' [Orian] would suffer by being forced to litigate in the contractual forum as it agreed to do was clearly foreseeable at the time of contracting."). Thus, Orian's bare allegations that it would endure a financial burden litigating the instant action in Illinois are not sufficient to establish that enforcement of the forum-selection clause is unreasonable. Based on the foregoing, the forum-selection clause in the 2011 UTC is valid under federal law.

**B.  Section 1404(a) Factors**

Although "[t]he presence of a forum-selection clause . . . will be a significant factor that figures centrally in the district court's calculus," Stewart, 487 U.S. at 29, "forum selection clauses 'should receive neither dispositive consideration' nor 'no consideration . . . but rather the consideration for which Congress provided in § 1404(a).'" Brock, 933 F.2d at 1258 (quoting Stewart, 487 U.S. at 31). In considering a motion to transfer under § 1404(a), the court should consider the following factors:

> (1) the plaintiff's initial choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10)

appropriateness in having a trial of a diversity case in a forum that is at home
with the state law that must govern the action; and (11) avoidance of unnecessary
problems with conflicts of laws.

Blue Mako, Inc. v. Minidis, 472 F. Supp. 2d 690, 703 (M.D.N.C. 2007).

In the absence of a forum-selection clause, the first factor, the plaintiff's initial choice of

forum, would normally favor South Carolina where the instant action was filed.  "However, as

the Supreme Court noted in *Stewart*, these factors must be viewed with reference to 'the parties'

expressed preference . . . in light of the forum-selection clause.'"  AC Controls Co. v. Pomeroy

Computer Res., Inc., 284 F. Supp. 2d 357, 363 (W.D.N.C. 2003) (quoting Stewart, 487 U.S. at

29.  "When a forum-selection clause is part of the balancing, as *Stewart* requires, it is more

logical to consider the plaintiff's initial choice of forum to be the forum that is contractually

agreed upon."  Republic, 35 F. Supp. 2d at 486; see also In re Ricoh Corp., 870 F.2d 570, 573

(11th Cir. 1989) ("In such cases, we see no reason why a court should accord deference to the

forum in which the plaintiff filed its action.  Such deference to the filing forum would only

encourage parties to violate their contractual obligations, the integrity of which are vital to our

judicial system.").  The forum-selection clause in the 2011 UTC designates Illinois as the forum.

Thus, this factor weighs in favor of Illinois.

The fourth factor, the possibility of a view of the premises, is irrelevant to the instant

breach of contract claim for unpaid invoices.  Additionally, factors two, three, six, and seven,

which pertain to the cost and ease of adjudicating the matter in a distant forum, where evidence

and witnesses may not be as accessible, favor neither Illinois nor South Carolina.  Orian claims

that all of its witnesses reside in South Carolina, while Defendants counter that the individuals

most knowledgeable of its business relationship with the Plaintiff are located in Illinois.  (Pl.

Mem. Opp'n Mot. Dismiss 7, ECF No. 8; Defs. Reply 6, ECF No. 13.)  "No matter which forum is selected, one side or the other will be burdened with bringing themselves and their witnesses from far away."  Brock, 933 F.2d at 1258.

Further, factors five and eight, the enforceability of a judgment and administrative difficulties of court congestion, are not discussed by either party, and there is no evidence of any difference between Illinois or South Carolina.  Finally, factors nine, ten, and eleven are all negated by the choice-of-law provision and forum-selection clause present in the 2011 UTC.  The interest of having localized controversies settled at home was eliminated by the mutual agreement of both parties to litigate all disputes in Illinois.  With respect to factors ten and eleven, the presence of a choice-of-law provision designating the application of Illinois law favors Illinois as the appropriate forum to preside over the instant case.  Moreover, an additional factor that "weighs heavily in favor of [Illinois] is the forum selection clause included in the contract the parties entered into:  the clause provides that the forum will be [Illinois]."  Brock, 933 F.2d at 1258.

Thus, after considering the factors in light of the forum-selection clause as instructed by Stewart, Orian's "evidence of inconvenience is insufficiently strong to overcome the counterweight of the parties' private expression of their venue preference."  AC Controls, 284 F. Supp. 2d at 364 (internal quotation marks omitted).  Based on the foregoing, the court finds that for the convenience of the parties and in the interest of justice, the instant case should be transferred to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a).

11

It is therefore

**ORDERED** that the Defendants' motion to transfer the case to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a), docket number 5, is granted.

**IT IS SO ORDERED.**


                                                    s/Henry M. Herlong, Jr.
                                                    Senior United States District Judge
Greenville, South Carolina
March 18, 2013